UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELOS CRUISE VENTURES II LLC, NORDIC HAMBURG CRUISE MANAGEMENT GmbH & CO KG and NORDIC HAMBURG INVEST PTE. LTD.<br><br>                    Plaintiffs,<br><br>                    v.<br><br>DELTA CORP SHIP MANAGEMENT DMCCO<br><br>                    Defendant. | Case No. 1:23-cv-<br><br>**COMPLAINT** |

Plaintiffs Delos Cruise Ventures II LLC., Nordic Hamburg Cruise Management GmbH & Co. KG and Nordic Hamburg Invest PTE. Ltd., through their attorneys Reitler Kailas & Rosenblatt LLP, for their complaint against Delta Corp Ship Management DMCCO, aver as follows:

**Parties to the Action**

1.  Plaintiff Delos Cruise Ventures II LLC ("**Delos**") is a Delaware corporation doing business in the United States and around the world. Delos is involved in the business of chartering and sub-chartering vessels, primarily vessels involved in passenger cruises.

2.  Plaintiff Nordic Hamburg Cruise Management GmbH & Co. KG ("**Nordic Management**") is a German corporation doing business in Germany. Nordic Management provides ship and technical management services to ship owners and charterers around the world.

3. Plaintiff Nordic Hamburg Invest PTE. Ltd. ("**Nordic Invest**") is a German corporation that is an affiliate of Nordic Management and that provides strategic investment primarily in shipping companies that engage Nordic Management to perform management services on their vessels.

4. Defendant Delta Corp Ship Management DMCCO ("**Delta Management**") is a Dubai based ship management company doing business around the world including in the United States through its US subsidiary, Delta Corp Logistics LLC.  Delta Management also recently obtained a $15 million line of credit with Valley National Bank on Long Island and also merged with Coffee Holding Corp. of Staten Island in connection with its application for a listing on the NASDAQ market in New York City.

## JURISDICTION AND VENUE

5. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and this Court has subject matter jurisdiction over this case under 28 USC 1333 (1) because it is a maritime claim arising from the wrongful arrest of a vessel.

6. This Court has personal jurisdiction over Defendant Delta Management because it is doing business in New York.

7. Venue is proper in New York because plaintiff Delos designates New York as the place of trial of this matter.

## Summary of the Claims Against Delta Management

8. On August 25, 2023, Delta Management wrongfully arrested the cruise vessel CALEDONIA SKY (the "**Vessel**") in the Federal Court of Australia., New South Wales Registry. The arrest writ pleading stated that Delta Management was seeking damages for Delos'

breach of a SHIPMAN Ship Management Agreement. Delta Management's arrest of the Vessel was improper because Delos never entered into the purported SHIPMAN agreement with Delta Management.

9. In the days leading up to the arrest of the Vessel on August 25, 2023 and even on that day, Delta had taken steps to deny Delos and its representatives, including Nordic Management, access to the Vessel. This denial of access to the bareboat charterer of the Vessel was totally without justification.

10. The wrongful arrest of the Vessel, and the actions of Delta Management prior to the arrest, triggered a series of charter party cancellations and other consequences that have caused damages to Delos, Nordic Management and Nordic Invest.

11. More specifically, at the time of the arrest of the Vessel, Delos had the Vessel under bareboat charter from Caledonian Sky Inc. Delta Management's denial of access to the Vessel to Delos, and its arrest of the Vessel on August 25, 2023 and continued possession of the Vessel, led Caledonian Sky Inc. to terminate the bareboat charter to Delos during the evening of August 25, 2023.

12. The reasons cited by Caledonian Sky Inc. for terminating the bareboat charter for the most part specifically related to the arrest of the Vessel and Delta's refusal to give Delos access to the Vessel.

13. For example, in its counsel's letter advising Delos of the arrest, Caledonian Sky cited Delos' failure to meet the minimum safe manning requirements to take over the Vessel on August 25. In responding to this specious claim, Delos noted that the flag state had confirmed in an email that "the Minimum Safe Manning Document will be issued as soon as Nordic's crew is onboard and the Vessel is handed over."

14. In the days leading up to the arrest, Delta had refused Nordic Management personnel access to the Vessel in order for Nordic to ensure that the Vessel would have an adequate complement of crew and that a smooth transition between the Delta crew and the Nordic crew would occur.

15. Caledonian Sky Inc. also demanded that Delos take immediate action to vacate the arrest of the Vessel by August 27 (which was a Sunday), or two days after the arrest.

16. Caledonian Sky also complained about the absence of hull and war risk insurance for the Vessel. Again, these were pretextual reasons to terminate the charter because Caledonian Sky had cancelled the insurance and Delos promptly provided proof that it had obtained the appropriate replacement insurance coverage.

17. Rather than deal with the uncertainties created by the arrest, Caledonian Sky Inc. decided to terminate the bareboat on pretextual grounds which clearly were not well-founded under the terms of the bareboat charter.

18. The termination of the bareboat charter by Caledonian Sky Inc. caused Delos to lose a lucrative three-year sub-bareboat charter of the Vessel to Captain Cook Management Pte Ltd ("Captain Cook"). The loss of the Captain Cook charter has and will cause Delos to lose over $20 million in profits that Delos stood to earn over the course of the Captain Cook sub-charter.

19. In conjunction with its sub-bareboat charter to Captain Cook, on August 24, 2023 Delos had signed a vessel management agreement with Nordic Management which was to run for a minimum 12 month period and had an annual management fee of USD 360,000.

20. Delos and Nordic Management contemplated that Nordic Management would provide crewing and technical management of the Vessel for the entire term of the Captain Cook sub-bareboat charter of the Vessel. The arrest of the Vessel by Delta Management on August 25,

4

2023 and the ensuing termination of the Delos/Caledonian Sky bareboat charter caused Delos to terminate the management agreement it signed with Nordic Management.

21.     As a result of Delos' termination of its management agreement, Nordic Management lost over $1,000,000 in management fees that it would have earned over the course of the Captain Cook sub-bareboat charter.

22.     Nordic Invest had the right to step into the Delos sub-bareboat charter with Captain Cook and thus lost the opportunity to share in the profits that would have been generated by that charter.

## Pertinent Facts

23.     On or about March 3, 2023, Delos entered into a bareboat charter party with Caledonian Sky Inc. pursuant to which Delos chartered the Caledonian Sky (the "Vessel") for a period of 975 days at charter party rates stipulated in Clause 17 of the charter. The March 3, 2023 bareboat charter between Caledonian Sky Inc. and Delos will be referred to as "**Bareboat Charter I**." The place of delivery of the Vessel on March 3, 2023 was Sembcorp Marine, Singapore.

24.     Delos' plan was to perform repairs and maintenance on the Vessel at Sembcorp Marine in Singapore and then to sub-charter the Vessel to cruise operators in and around Australia and adjacent areas.

25.     On March 3, 2023, Delos sub-bareboat chartered the Vessel to The Expedition Shipping Partners Ltd. ("ESP") at profitable charter rates. The sub-bareboat charter to ESP will be referred to as "**Bareboat Charter II**."

26. Delos planned to deliver the Vessel to ESP in Singapore on March 3, 2023. The initial charter period was for 730 calendar days, with an option for an additional 730 days to be declared after the first year of the charter.

27. In order to generate revenues before its own use of the Vessel, ESP did a short-term sub-charter back to Australian Pacific Touring PTY Ltd. ("APT"), the parent company of Caledonian Sky Inc., for the period March to August 2023. In conjunction with this sub-charter, ESP retained Delta Management to manage the Vessel.

28. On March 9, 2023, in conjunction with a loan it had obtained from Nordic Invest, ESP executed an assignment in favor of Nordic Invest in respect of ESP's rights and interests under Bareboat Charter II.

29. The assignment in favor of Nordic Invest gave Nordic Invest the right to step into ESP's shoes in the event of a default by ESP under Bareboat Charter II.

30. In early July 2023, ESP defaulted on its payment obligations under Bareboat Charter II.

31. Rather than exercise its rights to step into ESP's shoes under Bareboat Charter II, Delos and Nordic Invest entered into a reservation of rights agreement whereby Nordic Invest reserved all its rights under the Assignment Agreement with ESP including its right to step into Bareboat Charter II.

32. After ESP defaulted under Bareboat Charter II, Delos was able to time charter the Vessel to Captain Cook on a charter that was to begin on November 7, 2023. The bareboat charter to Captain Cook will be referred to as "**Bareboat Charter III**."

33. In order to generate revenue from the Vessel prior to the commencement of the Bareboat Charter III to Captain Cook, Delos began negotiating an interim time charter through

November 7, 2023 with APT which already had the Vessel on time charter until August 25, 2023 from ESP.

34. After ESP defaulted under Bareboat Charter II, Delos first negotiated a short-term charter with APT for the period from July until August 25, 2023. Since APT had previously committed to the charter of the Vessel until August 25, 2023, Delos and APT were able to finalize this short-term charter.

35. While APT agreed to the charter though August 25, 2023, APT deferred deciding on extending the time charter through November 7.

36. Since Delta was already managing the Vessel for APT and since APT preferred to have Delta Management remain as the Vessel manager, Delos began negotiations with Delta Management to have Delta Management stay on as the Vessel manager during the extension of the time charter to November, and then through the Captain Cook charter. Those negotiations continued throughout July 2023.

37. On July 28, 2023, Delos sent back to Delta Management a signed SHIPMAN Management Agreement expressly conditioned upon APT extending the time charter of the Vessel through November 7. The cover email enclosing the Management Agreement specifically stated that acceptance was subject to the following condition: "*One note on the SHIPMAN: from Delos' side, it is subject to receipt of the signed time charter from Cruising.com.au (APT). Delos does not have a signed charter back from APT as of today*."

38. Later that same day, Caroline Huot responded, "a Shipman Agreement with Delos as Bareboat Charterer of Caledonian Sky cannot be signed subject to a third-party TC [time charter]." The reference is to the APT time charter that was a condition to Delos' agreement to use Delta Management.

7

39. In a series of subsequent communications between Brian Ladin (the principal of Delos) and Delta Management, Delta expressly acknowledged that the Management Agreement had not been finalized. Thus, on July 30, 2023, two days after the Shipman with Delos was allegedly finalized, Caroline Huot of Delta wrote to Mr. Ladin: "while we would be happy to support APT for the last 3 weeks of the cruise, unless we have a following Shipman agreed with DELOS, this process will need clarification in term of which principal is endorsing current liabilities to crew…."

40. On August 4, 2023, Mudit Paliwal, the CEO of Delta, expressly acknowledged to Mr. Ladin that Delta Management had no agreement with Delos: "I think you should finalize the ship management terms with Caroline [Huot] without any delay to ensure the vessel is repaired prior to the Capt. Cook charter." On August 7, 2023, Mr. Paliwal again asked Mr. Ladin to, "kindly treat Delta as a technical manager for the purposes of finalizing the ship management agreement."

41. On August 14, 2023, Mr. Paliwal again acknowledged that Delos did not have a management agreement with Delta "given that it seems you have another Manager appointed."

42. All of the foregoing communications from Delta Management confirm that Delos and Delta had never finalized a management agreement, a fact further and conclusively confirmed by Delta's failure to ever invoice Delos under the purported management agreement.

43. APT never signed the extension of the time charter of the Vessel from August 25 to November 7, 2023 and as a result, the putative Delos-SHIPMAN agreement with Delta Management never went into effect.

44. Delos had also been involved in negotiations with Nordic Management in connection with obtaining financing from Nordic Management for repairs on the Vessel. The

proposed Nordic financing would be in conjunction with Delos agreeing that Nordic Management would manage the Vessel during the Bareboat III, the Captain Cook charter.

45. Delos did in fact sign a Vessel management agreement with Nordic Management on August 24, 2023.

46. In conjunction with the transition of management of the Vessel from Delta Management to Nordic Management, Delos on August 13, 2023 asked Delta Management to permit two vessel owners' representatives (from Nordic) to board the Vessel on August 16.

47. On August 15, 2023, Delta Management emailed Brian Ladin stating that the owners' representatives could not board the Vessel.

48. This request by Delos was to facilitate the transition of the vessel crew and management of the Vessel from Delta to Nordic. The failure to transition the crew—directly related to Delta's August 15 refusal to allow Nordic to board the Vessel—was cited by Caledonian Sky Inc. as a reason justifying the termination of the bareboat charter with Delos.

49. Also on August 15, 2023, Delta Management sent Brian Ladin the SHIPMAN management agreement that Mr. Ladin had signed on a conditional basis and argued that the "Delos Shipman with Delta will come into effect on 25 August 2023… when the vessel Caledonian Sky will be redelivered to you." This claim that the Shipman had been concluded between Delta and Delos was expressly contradicted by Delta's own emails sent to Delos and referenced in paragraphs 38 to 42 of this Complaint.

50. In this message, Delta Management acknowledged that the APT time charter had not been extended as Delos hoped it would be, and thus an essential condition precedent to the effectiveness of the Delta management agreement with Delos had not occurred.

51.     On August 25, 2023, Delta Management had the Vessel arrested in New South Wales, Australia, based on Delos' purported breach of the non-existent management agreement.

52.     On September 4, 2023, Delta Management released the arrest of the Vessel even though no security was posted by Delos or the owner of the Vessel, Caledonian Sky Inc. It appears that Delta Management did not want to cover the heavy cost of maintaining the Vessel, and paying court-imposed costs, while the Vessel was under arrest.

53.     As explained in paragraphs 12 through 18 and 47 through 49, Delta's refusal to permit Delos and Nordic to access the Vessel prior to August 25 and Delta's arrest of the Vessel on August 25, led Caledonian Sky Inc. to terminate Bareboat Charter I, the bareboat charter with Delos.

54.     After Delos threatened to arrest the Vessel for the improper termination of Bareboat Charter I, Caledonian Sky Inc. and APT came to an agreement with Delos where the latter accepted the termination of Bareboat Charter I in exchange for partial payment by APT for the substantial losses it would incur.

55.     As a result of the termination of Bareboat Charter I, Delos, Nordic Management and Nordic Invest have suffered substantial damages that arose directly from the wrongful arrest of the Vessel by Delta Management.

### As and For a First Claim for Relief by Delos
### (Wrongful Refusal of Access and Wrongful Arrest)

56.     Delos repeats and reavers paragraphs 1 to 55 of the Complaint as if fully set forth herein.

57.     As a result of Delta Management's refusal to grant Delos access to the Vessel prior to August 25, 2023 and as a result of the wrongful arrest of the Vessel by Delta on August 25, 2023, Delos has suffered damages that exceed $20,000,000.

**As and For a Second Claim for Relief by Nordic Management and Nordic Invest
(Wrongful Refusal of Access and Wrongful Arrest)**

58. Nordic Management and Nordic Invest repeat and reaver paragraphs 1-57 of the Complaint as if fully set forth herein.

59. As a result of Delta Management's wrongful actions Nordic Management and Nordic Invest suffered damages in excess of $1,000,000.

**As and For a Third Claim for Relief by Delos, Nordic Management and Nordic Invest
(Tortious Interference)**

60. Plaintiffs repeat and reaver paragraphs 1-59 of the Complaint as if fully set forth herein.

61. Delta Management, despite not having a claim against the Vessel, tortiously interfered with the Vessel's Bareboat Charter I and III by arresting the Vessel in Australia.

62. Delta Management was aware that arrest of the Vessel would cause delay of the Vessel, uncertainty among the parties involved and would likely disrupt the Vessel's charters. Nevertheless, despite knowing that it had no valid claim against the Vessel and Delos, Delta Management arrested the Vessel.

**WHEREFORE**, the Plaintiffs seek entry of Judgment against Defendant Delta Management as follows:

(1) On the first claim for relief, Delos should be awarded an amount to be determined at trial, but no less than $20,000,000;

(2) On the second claim for relief, Nordic Management and Nordic Invest should be awarded an amount to be determined at trial, but no less than $1,000,000;

(3) On the third claim for relief, the plaintiffs should be awarded damages in the amount determined by the Court; and,

11

(4) Interest and costs and any such further relief as may to this Court seem just and proper.

Dated: December 21, 2023                                      Respectfully Submitted,

                                                 **REITLER KAILAS & ROSENBLATT LLP**

                                                 */s/ Leo G. Kailas*
                                                 Leo G. Kailas
                                                 Jack P. McKay
                                                 885 Third Avenue, 20th Floor
                                                 New York, NY 10022
                                                 Tel: 212-209-3050
                                                 Fax: 212-371-5500

                                                 *Attorneys for Plaintiffs*